## A03A0521. THOMPSON et al. v. THE STATE.
### (585 SE2d 125)

MILLER, Judge.

Christopher and Katrina Thompson, husband and wife, were jointly tried and found guilty on two counts of child cruelty and one count of contributing to the deprivation of a minor. Following the denial of their motion for new trial, the Thompsons appeal, citing several enumerations of error. Having examined their enumerations and discerning no error, we affirm.

1. In four enumerations, the Thompsons argue that the evidence was insufficient to sustain the convictions. They contend that the trial court erred in denying their motion for directed verdict on all counts and in denying their motion for new trial. The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), is the proper test when the sufficiency of the evidence is challenged, whether that challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence. *Pennington v. State*, 254 Ga. App. 837, 838 (564 SE2d 219) (2002). We view the evidence in the light most favorable to support the verdict, and the Thompsons no longer enjoy the presumption of innocence. *Jackson*, supra.

So viewed, the evidence showed that C. T., the daughter of Christopher and Katrina Thompson, was primarily cared for by her parents, but had a babysitter a few times per week for about one month in June 1996. At this time, C. T. was about eight months old and could not crawl. The babysitter noticed scratches on the child's body and brought it to the attention of the Thompsons. On another occasion, the babysitter noticed a bruise on the left side of C. T.'s face when Christopher dropped off the child at the babysitter's home. Christopher explained that Katrina informed him that the child had "crawled" into a wall. The babysitter became uncomfortable caring for C. T. and was concerned that at eight months old, C. T. could not crawl and would frequently cry. On the advice of her aunt, the babysitter stopped babysitting C. T. Several months later in September 1996, Katrina Thompson called the babysitter and explained that C. T. was not moving. The babysitter advised Katrina to call 911.

Katrina apparently did not do so, as a few days later Katrina showed up at the babysitter's home with C. T. and stated that C. T. seemed to be in pain when she moved her arm.

On September 17, 1996, Katrina finally took C. T. to a doctor for a swollen arm. An x-ray was taken of C. T.'s arm, and she cried in pain during the procedure. It was discovered that C. T. had fractures to both bones in her right forearm. The fractures were a few weeks old at the time of the x-ray. The x-ray further revealed that C. T. also had four-month-old fractures to her left arm as well, and a chip fracture on her left ankle. A doctor opined that C. T.'s injuries were not accidental. Both Christopher and Katrina were evasive when questioned about C. T.'s injuries, and neither could explain how C. T. received the injuries nor name anyone who might have caused them.

The indictment alleged that the Thompsons caused C. T. excessive physical pain by breaking her bones and by denying her necessary and appropriate medical care. Under OCGA § 16-5-70 (b), a person "commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." The evidence showed that (i) while in the care of the Thompsons, C. T. suffered fractures to her arm causing manifest physical pain, (ii) the Thompsons refused to seek medical treatment for C. T. even when advised to do so (see *Wolf v. State*, 246 Ga. App. 616, 617 (1) (540 SE2d 707) (2000)), and (iii) the Thompsons were evasive in explaining the injuries.

*Chung v. State*, 240 Ga. App. 394, 395-396 (1) (523 SE2d 615) (1999), held:

> In determining the sufficiency of the circumstantial evidence to support a conviction of cruelty to a child (or to withstand a motion for a new trial), the trial court as well as this court will apply a "reasonable hypothesis rule." This is to say that a conviction based solely upon circumstantial evidence must be supported by facts which not only are consistent with guilt of the accused, but should exclude every reasonable hypothesis save that of the guilt of the accused. This does not mean that the [S]tate must exclude every possible hypothesis showing innocence, but any reasonable hypothesis showing innocence. The yardstick by which we determine what in a given case is a reasonable hypothesis is in the first instance a question for the jury. Thus, except where the guilty verdict is unsupportable as a matter of law, this court will not substitute its judgment as to what is a reasonable hypothesis for that of the jury or the trial court.

(Citation omitted.) The evidence, although circumstantial, was suffi-

cient to sustain the convictions for cruelty to children as alleged in the indictment. See *Lackes v. State*, 274 Ga. 297, 298 (1) (553 SE2d 582) (2001).

The Thompsons' argument that the evidence was insufficient to sustain Count 3 is moot in light of the fact that the trial court merged Count 3 into Count 2 for purposes of sentencing. See *Joachim v. State*, 263 Ga. 816, 817 (2) (440 SE2d 15) (1994); *Cullingham v. State*, 242 Ga. App. 499, 500 (2) (529 SE2d 199) (2000).

2. In their fifth enumeration of error, the Thompsons argue that the court erred in admitting certain similar transaction evidence. Although they objected to such evidence during a pretrial hearing, they failed to object to the testimony of the witnesses at trial and thereby waived the issue. See *Jones v. State*, 254 Ga. App. 863, 864 (1) (564 SE2d 220) (2002); *Wiley v. State*, 238 Ga. App. 334 (1) (519 SE2d 10) (1999). "The rule requiring that a party object at trial to similar transaction evidence is firm, and we are bound to follow it." (Footnote omitted.) *Upshaw v. State*, 257 Ga. App. 199, 200 (2) (570 SE2d 640) (2002).

3. In four enumerations of error, the Thompsons argue that the court erred in denying their various motions for mistrial. "We review for manifest abuse of discretion a trial court's denial of a motion for a mistrial. We will reverse the trial court's ruling only if a mistrial is essential to the preservation of the right to a fair trial." (Citation, punctuation and footnote omitted.) *Richards v. State*, 250 Ga. App. 712, 714 (3) (552 SE2d 114) (2001).

(a) The Thompsons first claim that the trial court erred in denying their motion for mistrial made after a prosecution witness referred to the Thompsons' refusal to submit to a polygraph examination. They argue that the State intentionally solicited the statement by asking the witness what was the "gist" of a conversation he had with Katrina Thompson. In response to an objection, the State rephrased the question, asking what Katrina said. The witness answered, "Mrs. Thompson said that they would not come in for a polygraph test." The State argues that it did not intend to solicit such information, and that the witness was asked, prior to testifying, not to mention the polygraph examination. Immediately following the statement, the trial court gave a curative instruction to the jury.

This Court has held that where the defendant and the State do not stipulate that the results of a polygraph test taken by a witness would be admissible at trial, the questioning of a witness regarding those test results is impermissible. *Dorminey v. State*, 258 Ga. App. 307, 309 (1) (574 SE2d 380) (2002). "Nonetheless, while in some cases mistrials are required when a witness mentions a polygraph test, reversal is not always warranted." (Citation omitted.) Id. Here, it does not appear that the State intentionally solicited the statement,

and although it was inadmissible, "the trial court's swift, emphatic action in instructing the jury to ignore the statement sufficiently remedied the situation." *Evans v. State*, 256 Ga. 10, 13-14 (5) (342 SE2d 684) (1986); see *Dorminey*, supra, 258 Ga. App. at 309 (1). Thus, the trial court did not abuse its discretion in denying the motion for mistrial on this ground.

(b) The Thompsons argue that the court erred in denying their motion for mistrial when counsel for the State commented that he was seeking testimony that C. T. did not sustain any broken bones while in the custody of the Department of Family and Children Services. However, the trial court gave a curative instruction to the jury admonishing them to disregard the comment. Thus, in this instance, the trial court did not manifestly abuse its discretion, and we will not disturb its decision denying a motion for mistrial. See *Glaze v. State*, 253 Ga. App. 349, 352 (1) (559 SE2d 90) (2002).

(c) The Thompsons also moved for a mistrial when the trial court asked whether the Thompsons denied being the parents of the child. This inquiry by the trial court followed a line of questioning of a witness as to who were the biological parents of C. T. The Thompsons argue that this testimony was allowed in violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Their argument is misplaced, however, as *Bruton* involves a statement by a nontestifying co-defendant implicating a defendant as the perpetrator of a crime in violation of the defendant's confrontation rights. See *York v. State*, 242 Ga. App. 281, 284 (2) (528 SE2d 823) (2000). Testimony regarding whether Christopher was the biological father of C. T. does not implicate Christopher as the perpetrator of a crime. Thus, the trial court did not err in denying the motion for mistrial on this ground.

4. The Thompsons argue that the court "erred by stopping and continuing the trial, sua sponte, until the next day to allow the [S]tate to obtain x-rays that were not furnished to the appellants as required by the rules of discovery. . . ." They further argue that the court erred in admitting such evidence.

The trial court concluded proceedings one day at 3:40 p.m., stating that "because of problems beyond the Court's control we're going to close for the evening at this point to return in the morning at 9 o'clock." The record does not reflect that the court concluded trial for the purpose of allowing the State to acquire x-rays of C. T. When court reconvened the next morning, counsel for the State sought to admit the x-rays into evidence. The State explained that it had acquired the x-rays that same morning. The Thompsons sought to exclude such evidence on the ground that the State failed to provide them the evidence ten days prior to trial as required by OCGA § 17-16-4 (a) (4).

The Thompsons' "failure to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with the requirements of OCGA § 17-16-1 et seq. waived [their] right to assert error on appeal stemming from the State's alleged failure to comply with discovery statutes." (Citation and punctuation omitted.) *Shelton v. State*, 257 Ga. App. 890, 892 (2) (572 SE2d 401) (2002); see *Moss v. State*, 275 Ga. 96, 100-101 (7) (561 SE2d 382) (2002). Moreover, the record reveals that the State disclosed the x-rays to the defense as soon as it acquired them. See *Shelton*, supra, 257 Ga. App. at 892 (2). "When, as here, the prosecution and defense both view the evidence for the first time simultaneously, the statute is not violated." (Citations omitted.) Id.

The Thompsons further argue that the court erred in allowing the admission of a photograph of C. T. However, although the photograph was used by a witness to identify C. T., it was not admitted. Therefore, we see no error.

5. The Thompsons argue that expert witnesses for the State were allowed to base their opinions on the opinions of other experts in violation of *Jordan v. Ga. Power Co.*, 219 Ga. App. 690, 692-694 (1) (466 SE2d 601) (1995). A doctor testified that many children suffer from battered child syndrome and proceeded to name the physician who first reported the syndrome. We see no reference to the opinions of other experts here. Therefore, the court did not err in allowing the doctor's testimony.

6. The Thompsons' twelfth enumeration of error is deemed abandoned as it is not supported by citation to authority or argument. See Court of Appeals Rule 27 (c) (2); *Brackins v. State*, 249 Ga. App. 788, 790 (4) (549 SE2d 775) (2001).

7. The Thompsons argue that the trial court erred in overruling their demurrers to the indictment. They complain that the indictment was not specific as to the dates of the alleged offenses. The indictment alleges that the crimes occurred between February 7, 1996, and September 19, 1996. "The test as to the definiteness of the indictment is whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." (Citation omitted.) *Schwindler v. State*, 254 Ga. App. 579, 582 (2) (563 SE2d 154) (2002); see *Smith v. State*, 249 Ga. App. 39, 42 (2) (547 SE2d 598) (2001).

Where the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations, as long as the defendant is not surprised or prejudiced by presentation of evidence that the offenses occurred at a

time substantially different from that alleged in the indictment.

(Footnote omitted.) *Demetrios v. State*, 246 Ga. App. 506, 512 (6) (541 SE2d 83) (2000). Here, the Thompsons argue that the failure to specifically list the dates the offenses occurred prevented them from adequately preparing a defense. Such a bare assertion, however, does not show that the Thompsons were prejudiced or surprised. "[T]he indictment stated the offenses and the dates with sufficient certainty to allow [the Thompsons] to prepare [their] defense and to protect against double jeopardy concerns." Id.

8. The Thompsons waived their contention that the State made improper argument during closing statements, by failing to renew their objection or move for mistrial following the trial court's curative instruction and its invitation to renew the objection if needed. See *Seidenfaden v. State*, 249 Ga. App. 314, 316 (1) (547 SE2d 578) (2001).

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JUNE 26, 2003.

*Gerald R. Akin*, for appellants.
*J. Gray Conger, District Attorney, Margaret E. Bagley, Assistant District Attorney*, for appellee.