## A04A1960. GRAVES v. THE STATE.
(612 SE2d 37)

RUFFIN, Chief Judge.

A jury found Daniale Graves guilty of cruelty to children for failing to seek medical care for her eight-month-old daughter, who died as a result of blunt force trauma to the head, chest, and abdomen. On appeal, Graves challenges the sufficiency of the evidence. She also claims that she received ineffective assistance of counsel. For reasons that follow, we affirm.

1. On appeal from a criminal conviction, we construe the evidence in the light most favorable to the verdict, and Graves no longer enjoys a presumption of innocence.[1] We neither weigh the evidence nor assess the credibility of the witnesses, and we will affirm as long as there is some evidence — even if contradicted — to support each necessary element of the State's case.[2]

Viewed in this manner, the evidence shows that in January or February 2000, Graves, her children, and her husband, Michael Mikenney, moved to Columbus, Georgia where they shared an apartment with Mikenney's cousin, Alicia Nellum, her children, and her fiancé, James Banks. Graves had several children, including an infant, Danyale. According to Banks, the infant was cared for either by Graves or Mikenney.

On April 2, 2000, Banks, who worked nights, was awakened at 4:30 in the afternoon by the sound of the baby crying. Graves, who had been away from the apartment, returned and was told to check on the baby, but she did not do so. That same evening, a woman named Cotina Howard drove Graves back to the apartment. According to Howard, while she was sitting in her car, she could hear the baby crying from the second floor apartment. Still Graves did not go inside to check on her child.

Later that evening, Graves and Mikenney went inside the apartment where Banks heard them "bickering." Approximately 15 minutes later, Graves yelled, "my baby, what's wrong with my baby?" Banks ran upstairs and began performing CPR on the infant. The child eventually was taken to the emergency room where she was dead upon arrival. According to Dr. McClendon, who was on duty in the emergency room, he saw multiple signs that the infant had been abused, including burn marks and scars on the body. McClendon also noticed that the baby had blood inside her retina, which he testified "is a sign of Shaken Baby Syndrome."

---

[1] See *George v. State*, 257 Ga. App. 645 (1) (572 SE2d 644) (2002).

[2] See id.

Dr. Falzon, a medical examiner with the Georgia Bureau of Investigation, performed an autopsy. Dr. Falzon noted multiple external injuries to the child, including injuries to the head and neck, which he estimated occurred within two days of the child's death. There were also numerous, overlapping abrasions on the child's abdomen as well as a contusion indicative of blunt force trauma. Dr. Falzon testified that the child's back was bruised and abraded.

In addition to the external, Dr. Falzon performed an internal examination, which showed blood on top of the infant's brain and extensive hemorrhaging near the optic nerves, which are consistent with Shaken Baby Syndrome. X-rays taken of the child showed seven rib fractures that had occurred one to two weeks before death. The infant also had bruised lungs and a liver that had been lacerated 12 to 24 hours before death. According to Dr. Falzon, many of the baby's injuries would have been painful and would have caused her to cry. Ultimately, Dr. Falzon concluded that the child's death had been caused by "a combination of blunt force trauma to the head, chest, and abdomen."

Nellum testified that, two days before the infant died, she saw Graves and Mikenney in a room with the baby completely covered in blankets. Because it was hot, Nellum pulled back the blankets and saw a burn mark on the child's face. Graves attributed the mark to one of the other children. Nellum noticed other "marks" on the child, which Graves attributed to mattress springs.[3]

Based upon the extent of the child's injuries, Graves was charged with felony murder and several counts of cruelty to children.[4] Although the jury acquitted Graves of most charges, it found her guilty of one count of cruelty to children in that she

> between the 31st day of March and the 2nd day of April, 2000, did unlawfully and maliciously cause [the infant], a child under the age of eighteen (18) years, excessive physical pain by failing to get necessary and appropriate medical care for the child's injuries to the abdominal area.

On appeal, Graves argues that the evidence is insufficient to support her conviction because the State presented no "evidence that [she] knew or should have known that the child was injured and needed medical care." We disagree. The medical evidence shows that the child had multiple injuries sustained over the course of several

---

[3] Dr. Falzon testified that the bruising on the child's body would not have been caused by mattress springs.

[4] Mikenney, Graves' co-defendant at trial, was convicted of felony murder as a result of the infant's death.

days that would have been painful to the child. And at least two witnesses testified that they heard the child crying while Graves was present. Accordingly, there is some evidence that Graves either knew or should have known that her child was in distress.

Furthermore, Graves gave a statement to law enforcement officers and admitted having seen the child's injuries two weeks before her death. When asked why she did not seek medical attention for the injuries, Graves explained that Mikenney "told her . . . not to take the child to the hospital, that they'll make a big deal out of all the marks." Under these circumstances, the evidence was sufficient to support the jury's verdict.[5]

2. Graves also raises a claim of ineffective assistance of trial counsel. In her brief, she baldly asserts that counsel was ineffective "on general grounds, failure to timely make objections and requests of [sic] mistrials, and other grounds to be shown at [sic] hearing." However, the only argument expounded upon at the hearing on Graves' motion for new trial and in her brief is that her attorney was ineffective for failing to seek severance of her trial from that of Mikenney. Thus, it is the only argument that we address on appeal.[6]

"To succeed in [her] ineffective assistance of counsel claim, [Graves] must show that trial counsel's performance was deficient and that the deficiency prejudiced [her] defense."[7] At the hearing, Graves' attorney said that his decision not to seek severance was trial strategy. Specifically, he stated, "[w]e had something that a jury was going to be looking to pin on somebody. And I wanted to have somebody else for that jury to pin it on besides my client." "Such a strategic choice, made after thoughtful consideration, cannot support a claim of ineffective assistance of counsel."[8] Given Graves' acquittal of the most serious charges, the strategy seems to have worked.[9]

*Judgment affirmed. Adams and Bernes, JJ., concur.*

DECIDED MARCH 14, 2005.

*Mark A. Casto*, for appellant.

---

[5] See *Mikenney v. State*, 277 Ga. 64, 66 (2) (586 SE2d 328) (2003); *Thompson v. State*, 262 Ga. App. 17, 17-19 (1) (585 SE2d 125) (2003).

[6] See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[7] *Ross v. State*, 265 Ga. App. 178, 179-180 (2) (593 SE2d 365) (2004).

[8] *Smith v. State*, 269 Ga. App. 133, 143 (4) (d) (603 SE2d 445) (2004).

[9] See *Fogarty v. State*, 270 Ga. 609, 613 (513 SE2d 493) (1999) (defendant's acquittal of multiple counts demonstrates counsel's effectiveness).

*J. Gray Conger, District Attorney, Margaret E. Bagley, Assistant District Attorney*, for appellee.