FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 20

BY_____
    DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45253-7-II |
| Appellant, | |
| v. | |
| KEELAN BERNICE PREDMORE, | Consolidated with |
| Respondent, | |
| STATE OF WASHINGTON, | No. 45256-1-II |
| Appellant, | |
| v. | |
| MICHAEL FREDRICK PREDMORE, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. – The State appeals the trial court's order granting Keelan Bernice Predmore and Michael Fredrick Predmore's CrR 7.4(a)(3) motions to arrest judgment after a jury convicted each of them of malicious mischief in the first degree[1] of a rental house. The State argues that there was sufficient evidence that the Predmores maliciously caused more than $5,000 in damage to the rental house in retaliation for being evicted and that this damage occurred during the charged time period. Because the evidence did not establish that Keelan and Michael Predmore *individually* caused more than $5,000 in damage to another's property and the jury was not instructed on accomplice liability, we affirm the trial court.

---

[1] RCW 9A.48.070(1)(a).

FACTS

I. BACKGROUND

In February 2010, Keelan and Michael[2] rented a three bedroom house from Seth Walter on a month-to-month lease. Walter conducted a walk-through with the Predmores when they signed the lease and no damages to the house were noted at that time. The Predmores lived in the house with their son and daughter.

Walter soon started to have trouble collecting the rent from the Predmores. In April 2012, the Predmores stopped paying rent, and Walter started eviction proceedings. Walter served the eviction papers in late April or early May. He obtained the judgment evicting the Predmores on May 16.

Walter went to the house on May 24, after he had learned that the Predmores had vacated the house. Upon entering the house, he observed significant damage throughout the house. There were holes in several walls and in the kitchen cabinets, some the size of a baseball or a fist; nail polish had been thrown on the carpet; the refrigerator had several dents in it; the kitchen island had been damaged; the stair railing had been pulled out of the wall; and there was graffiti on the downstairs bathroom wall. Walter had not noticed any of this damage when he had last been in the home two months earlier to check on an appliance, and the Predmores had not reported any problems with the house's condition. Walter spent $13,700 to repair the damage.

---

[2] Because Keelan and Michael Predmore share a last name, we refer to them by their first names to avoid confusion. We intend no disrespect.

2

## II. PROCEDURE

The State charged Keelan and Michael separately with malicious mischief in the first degree. Each of their charging informations alleged that they committed the offense as accomplices.[3]

### A. Testimony and Jury Instructions

Walter testified for the State as described above. Two deputies who had been to the house prior to May 24, one of whom also responded to house on May 25 after Walter reported the damage, also testified for the State.

The deputy who responded to the house on May 25, Pierce County Deputy Sheriff Sheldon W. Lessard, testified about the damage to the house he observed that day. That testimony was consistent with Walter's testimony. Deputy Lessard also testified that he had been at the house on May 17 with Deputy Dennis D. Miller, Jr.[4] During the May 17 contact, Deputy Lessard entered the house and spoke with Michael in the dining room area. He observed Michael taking the legs off of the dining room table; Michael explained that he was disassembling the table because the family had been evicted and were moving. At that time, Deputy Lessard observed some of the same damage he observed on May 25. But he did not personally see Michael or Keelan damage the house. Although Deputy Lessard testified that Michael seemed agitated because the deputies

---

[3] Before trial, the trial court denied the Predmores' pretrial *Knapstad* motions to dismiss for lack of evidence. *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

[4] The record does not show why the deputies were at the house or why they spoke Michael or Keelan.

were at the house on May 17, he testified that Michael did not seem to be concerned about the damage to the house.

Deputy Milller testified that when he was at the house on May 17, he spoke to Keelan in an upstairs bedroom. While in the house, he also could see the stairway, the upstairs hallway, the kitchen, the living area, and the dining area. Although he observed holes in the walls as he "went upstairs and then to the left down the hallway" to the bedroom, he did not recall seeing any other damage. Verbatim Report of Proceedings (VRP) at 78. He did not personally observe Keelan or Michael damage the house.[5]

The Predmores's sole witness was Roger McElroy, a building material salesperson. McElroy testified that on February 9, 2012, he met with Michael at the rental house to look at several damaged items, specifically, five interior doors, a cabinet door, and the end panel of the kitchen island. McElroy did not know when these items had been damaged. He also testified that he did not observe any other damage to the house, but he stated that he was not looking for any additional damage and Michael did not ask him to examine anything elsewhere in the house.

After the parties rested, they discussed the jury instructions with the trial court. The State's proposed to-convict instructions (one for each defendant) required the jury to find that each defendant *or an accomplice* caused more than $5,000 of damage to the property. The Predmores objected to the accomplice liability language in the to-convict instructions. The trial court struck

---

[5] After the State rested, the Predmores renewed their motions to dismiss, arguing that the State had not presented any evidence that either of them had caused the damage. The trial court denied these motions.

4

the accomplice language, finding that there was no evidence supporting an accomplice liability theory.[6] The trial court's to-convict instructions required the jury to find that each defendant caused physical damage exceeding $5,000 "on or about the period between the 17th day of May and the 24th day of May, 2012"; these instructions did not mention accomplice liability. Clerk's Papers (CP) at 75, 76. The jury found Keelan and Michael guilty of first degree malicious mischief.

## B. Motions to Arrest Judgments

Following the verdict, the Predmores filed motions to arrest the judgments under CrR 7.4(a)(3), arguing that the evidence was insufficient to prove that (1) the damages occurred on or about May 17th through May 24th, 2012; (2) either party was present when the damage occurred; (3) either party individually caused the damage; (4) either party caused the damage with malicious intent; or (5) any damage either party individually caused resulted in over $5,000 in damages. The trial court granted the motions and entered written findings of fact and conclusions of law for each of the Predmores.

In its conclusions of law, the trial court noted that it had not instructed the jury on accomplice liability "because there was no evidence presented that either party acted as an accomplice to the crime of malicious mischief in the first degree." CP at 104 (Conclusion of Law (CL) 3), 218 (CL 3). It found, inter alia, that although the State had proved that the Predmores had motive and opportunity to cause the damage, this was insufficient to prove the individual charges against them because the State had failed to present any evidence that either of the Predmores

---

[6] The State does not appeal this ruling.

individually acted to cause the more than $5,000 in damage to the residence. The trial court arrested the judgments and dismissed the charges with prejudice. The State appeals.

## ANALYSIS

The State argues that the trial court improperly arrested the judgments because there was sufficient evidence to support the jury's verdicts. We disagree.

### I. STANDARD OF REVIEW

CrR 7.4(a)(3) allows a defendant to move to arrest judgment for "insufficiency of the proof of a material element of the crime." In ruling on a motion for arrest of judgment, the trial court may not weigh the evidence; instead, it may only test or examine the sufficiency the evidence. *State v. Randecker*, 79 Wn.2d 512, 517, 487 P.2d 1295 (1971); *State v. Hampton*, 100 Wn. App. 152, 157, 996 P.2d 1094 (2000), *reversed on other grounds*, 143 Wn.2d 789, 24 P.3d 1035 (2001). The evidence presented in a criminal trial is legally sufficient to convict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). When reviewing a trial court's decision on a motion for arrest of judgment, we engage in the same sufficiency inquiry as the trial court. *Longshore*, 141 Wn.2d at 420.

### II. NO EVIDENCE THAT EACH DEFENDANT INDIVIDUALLY CAUSED OVER $5,000 IN DAMAGES

The State argues that the trial court erred when it determined that there was insufficient evidence each defendant caused the relevant damages because there was circumstantial evidence that the Predmores caused the damages and there was no evidence that anyone (either the couple's children or a stranger) caused the damages. The State contends that the evidence that the

Predmores had motive, means, and opportunity to damage the house was sufficient to establish they caused the damages because the Predmores' conduct was inconsistent with innocence or manifested consciousness of guilt and the circumstances did not support an innocent explanation.

> RCW 9A.48.070(1) provides in part:
>
> A person is guilty of malicious mischief in the first degree if he or she knowingly and maliciously:
>
> (a) Causes physical damage to the property of another in an amount exceeding five thousand dollars[.]

There was no accomplice liability instruction, and none of the parties argued that either defendant was guilty as an accomplice. Thus, the State had to prove that each of the Predmores committed the offense as a principle, which required it to prove that each had *individually* caused more than $5,000 of physical damage to Walter's property.

Even if we assume, without deciding, that there was sufficient evidence that Keelan and Michael individually caused damage to the house, the State presented no evidence from which the jury could have attributed any portion of the total damages to any individual defendant.[7] If the to-convict instructions had allowed the jury to convict the Predmores as accomplices rather than requiring the jury to find that Keelan and Michael had individually caused more than $5,000 in damages, the State's argument might have some merit. But, even though the evidence was

---

[7] The State asserts that the graffiti in the bathroom could be contributed to Michael because it referenced the author's male genitalia and that the damage to the carpet could be contributed to Keelan because the damage was caused by nail polish. Even assuming that the jury could have made these same attributions, the record does not show that the damage to the bathroom containing the graffiti or the cost of the carpet exceeded $5,000.

7

sufficient to show that the aggregate damages far exceeded $5,000, it was not sufficient to show that any *individual* person had caused more than $5,000 in damage.[8]

Citing several cases, the State contends that there was sufficient circumstantial evidence to support the jury's verdict, particularly because this is the type "clandestine destruction" that will not likely result in direct evidence.[9] Br. of Appellant at 14 (emphasis omitted). But, as discussed above, even presuming that there was sufficient evidence to support a finding that both Michael and Keelan caused the damage, there was no evidence, either direct or circumstantial, that would have assisted the jury in determining how much damage Michael and Keelan caused individually. None of the cases the State cites address circumstances where the jury had to apportion damages between two potential principles in a crime, so they are not helpful here.

The State had to prove that each of the Predmores committed the offense as a principal, which required it to prove that each had *individually* caused more than $5,000 of physical damage to Walter's property. Although the State presented evidence of more than $10,000 in aggregate

---

[8] The State argues that the trial court erred by weighing the evidence of causation. This argument is not well taken because the record contains no evidence of who caused what amount of damage, so there was no evidence for the trial court to weigh as to this element.

[9] The State cites *United States v. Schlesinger*, 438 F.Supp.2d 76 (E.D.N.Y, 2006); *State v. Mace*, 97 Wn.2d 840, 843, 650 P.2d 217 (1982); *State v. Young*, 87 Wn.2d 129, 137, 550 P.2d 1 (1976); *State v. Johnsen*, 76 Wn.2d 755, 758, 458 P.3d 887 (1969); *State v. Despain*, 152 Wash. 488, 489-91, 278 P. 173 (1929); *State v. Nichols*, 143 Wash. 221, 228, 255 P. 89 (1927); *State v. We*, 138 Wn. App. 716, 729, 158 P.3d 1238 (2007), *review denied*, 163 Wn.2d 1008 (2008) (the State incorrectly identifies this case as *State v. White Eagle*); *State v. Clark*, 78 Wn. App. 471, 475-80, 898 P.2d 854, *review denied*, 128 Wn.2d 1004 (1995); *State v. Pennewell*, 23 Wn. App. 777, 782, 589 P.2d 748, *review denied*, 92 Wn.2d 1036 (1979) ; *Thompson v. State*, 262 Ga. App. 17, 585 S.E.2d 125 (2003); *Warren v. State*, 475 So. 2d 1027 (Fla. App. 1 Dist., 1985); *Bustamante v. State*, 557 N.E.2d 1313, 1320 (Ind., 1990); *Com. v. Roman*, 43 Mass. App. Ct. 733, 686 N.E.2d 218 (1997), *aff'd*, 427 Mass. 1006, 694 N.E.2d 860 (1998).

damages to the house, there was no evidence tying any specific damage to any specific person and there was no way the jury could attribute a specific amount of damage to either Michael or Keelan individually, so the evidence does not support the convictions. Accordingly we hold that the trial court did not err in granting the motions to arrest judgment and dismissing both charges. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Worswick, P.J.

Melnick, J.