311 Ga. 259
FINAL COPY


S21A0296.  BYERS v. THE STATE.


PETERSON, Justice.

Christopher Byers appeals his convictions for malice murder, aggravated battery, concealing the death of another, abandonment of a dead body, and tampering with evidence, all related to the killing of Ray Walnoha.[1] Byers's primary enumeration of error is that the trial court erred by excluding inculpatory statements by

[1] Walnoha was killed sometime in late July 2014. On December 7, 2016, a Pickens County grand jury indicted Byers and Arnold Griffith, Jr., for malice murder and other crimes. On February 2, 2018, the grand jury returned a new indictment of Byers alone, charging him with malice murder, three counts of felony murder, three counts of aggravated assault, aggravated battery, concealing the death of another, abandonment of a dead body, and four counts of tampering with evidence. After a trial held from July 30 through August 6, 2018, a jury found Byers guilty on all counts. On August 6, 2018, the trial court sentenced Byers to life in prison for malice murder, along with concurrent prison sentences of twenty years for aggravated battery, five years for concealing the death of another, three years for abandonment of a dead body, and five years for tampering with evidence. The felony murder counts were vacated by operation of law, and the trial court merged the remaining counts. Byers filed a motion for new trial on August 17, 2018, and amended the motion on February 24, 2020. Following a hearing, the trial court denied the motion in an order entered on August 10, 2020. Byers filed a timely notice of appeal on August 18, 2020, and the case was docketed to this Court's term beginning in December 2020 and submitted for a decision on the briefs.

another man involved in the crimes, overheard by a defense witness. Byers also argues that his conviction for aggravated battery was not supported by sufficient evidence, and that, alternatively, that count should have merged into his malice murder conviction, and that his sentence for the crime of tampering with evidence should have been that of a misdemeanor. We agree that the tampering count should have been treated as a misdemeanor, and so we vacate Byers's conviction on that count and remand the case for resentencing. We conclude that any error in failing to admit the defense witness testimony at issue was harmless, and that the evidence was sufficient to support a conviction for aggravated battery on which the trial court properly entered a separate sentence, and we therefore affirm Byers's other convictions.

Byers's convictions are predicated on evidence that he killed Walnoha with an ax at the Pickens County home of Arnold Griffith, Jr. The killing occurred sometime in late July 2014. Walnoha's body was never found.

After Byers was taken into custody on an unrelated warrant in

2

the fall of 2016, he admitted to an investigator that he twice struck Walnoha in the head with an ax while Walnoha slept on a couch on Griffith's porch, claiming that Walnoha intended to kill and rob Griffith and his family. Byers claimed that he then told Griffith that Walnoha was dead; Walnoha was still alive, however, having managed to crawl into the yard. After finding Walnoha in the yard, Byers claimed, Griffith struck Walnoha with the ax in the back of the neck. Byers admitted that he buried Walnoha's body in the woods with Griffith, cleaned up the crime scene, and took Walnoha's car, while Griffith cleaned off the ax. Byers also made incriminating statements to fellow inmates; one inmate testified that Byers told him that Walnoha was "twitching" or "kind of convulsing" when Byers and Griffith found him in the yard.

Griffith, who pleaded guilty to various charges related to Walnoha's death prior to Byers's trial, testified that, on the day Walnoha was killed, Byers summoned him to look out into the yard, where, Byers reported, Walnoha was "dying." Griffith testified that he observed that Walnoha was sitting in the yard, "swaying."

Griffith testified that he told Byers he would have to "do something" and then looked away, whereupon he heard what he presumed to be the sound of Byers killing Walnoha with an ax. Griffith admitted that he helped Byers clean up the crime scene, including using bleach on the porch, cleaning off the ax, and burying the body in the woods nearby. Griffith testified that Byers later told Griffith that he had moved the body but did not say where.

Byers's admissions and Griffith's statements as to Byers's involvement in Walnoha's death were corroborated by other evidence. On July 23, 2014, Byers's sister and mother saw Walnoha and Byers together in Walnoha's car. Sometime in the next few days, Byers's mother saw Byers driving Walnoha's car. Byers showed his mother that he had Walnoha's wallet, driver's license, and cell phone, and reported that Walnoha had given him the car and was with his girlfriend in Tennessee. Byers, who was acting strangely, showed his mother what she called a "hatchet" that was in the trunk of the car. On July 28, 2014, Walnoha's car was involved in an accident and found abandoned about two miles from the crash site.

4

Byers's DNA was recovered from blood on the driver's side airbag of the car.

Several months after Walnoha disappeared, Byers visited Walnoha's brother and the brother's girlfriend, telling her, "I don't think you'll ever have to worry about Ray knocking on the door again." In March 2016, Byers asked Walnoha's sister for help with legal trouble involving a car accident, asking her to testify that Walnoha never let anyone drive his car. Byers told the sister that her brother had met "some girl" and was in Kentucky.

The investigation into Walnoha's disappearance was sparked in earnest in May 2016 when sheriff's deputies visited Griffith's home while investigating an unrelated matter. William Bartlebaugh, who was staying at Griffith's house, showed deputies a purported burial site near the home. Griffith also went with police and identified a place on a trail near the home as the place where Walnoha had been buried. A cadaver dog alerted to the same location. In a nearby burn barrel, agents found small bones, consistent with finger or foot bones, but too small for agents to test

for DNA or even determine whether they were human remains. Agents also saw an area of the ground that appeared to have been disturbed, consistent with a very shallow grave.

GBI agents found that floorboards of a porch on Griffith's house had been bleached and that a wall was discolored and tested positive for the presence of blood. Inside the house, agents found a license plate that matched Walnoha's car. They also collected an ax from the nearby home of Griffith's sister, Marjorie Babcock, that matched the description of the murder weapon later given by Byers.

After his arrest in the fall of 2016, Byers identified as Walnoha's burial site the same place near Griffith's home that Griffith and the cadaver dog had identified.

1.    Byers first argues that the trial court erred in excluding evidence proffered by the defense that Griffith had admitted killing Walnoha. We conclude that any error in this evidentiary ruling was harmless.

The defense proffered that Griffith's brother-in-law, Wesley Babcock, would testify that he overheard Griffith's inculpatory

6

statements over a baby monitor that Wesley had set up in the room of his wife, Marjorie. Wesley testified that he used the baby monitor as part of his efforts to care for his wife, who was unwell, and he began to testify about a visit by Griffith to his sister in her bedroom about a month before her death in December 2017. Citing OCGA § 16-11-62 and general expectations of privacy in a bedroom, the trial court sustained the State's objection to Wesley's testimony about what he overheard via the baby monitor that day. The defense proffered for the record that Wesley would have testified that he heard Griffith tell his sister that Byers hit Walnoha with the ax first, before Griffith "finished him off and put him out of his misery."

We need not, and do not, decide whether the trial court properly concluded that Wesley's overhearing constituted a violation of OCGA § 16-11-62,[2] whether the State even had standing to raise

_____

[2] OCGA § 16-11-62 (1) prohibits "[a]ny person in a clandestine manner intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversation of another which shall originate in any private place[.]" Since 2015, before the overhearing at issue in this case, "private place" has been defined for purposes of this provision as "a place where there is a reasonable expectation of privacy." OCGA § 16-11-60 (3).

such a violation in the scenario presented here, or whether a party may forfeit a challenge to standing of this sort by not raising it in a timely way before the trial court.[3]

> It is fundamental that harm as well as error must be shown for reversal. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict.

---

[3] Byers does not challenge the State's standing to seek exclusion of Wesley's testimony. OCGA § 16-11-67 provides that "[n]o evidence obtained in a manner which violates any of the provisions of this part [which includes OCGA § 16-11-62] shall be admissible in any court of this state except to prove violations of this part." We previously held that Fourth Amendment standing principles apply to attempts to exclude evidence on the ground that it was obtained in violation of OCGA § 16-11-62. See *Hampton v. State*, 295 Ga. 665, 668-670 (2) (763 SE2d 467) (2014) (defendant did not have standing to seek suppression under OCGA §§ 16-11-66.1 (a) and 16-11-67 of text messages associated with account that he had not shown was his; "[T]he focus of OCGA §§ 16-11-62 through 16-11-67 is the protection of individuals from invasion of their privacy. A Fourth Amendment analysis is appropriate, and as noted, rights under the Fourth Amendment are personal, and in order to challenge the validity of a government search an individual must actually enjoy the reasonable expectation of privacy, that is, the individual must have standing." (citations omitted)); see also *Nuckles v. State*, 310 Ga. 624, 631 (3) (853 SE2d 81) (2020) (concluding that Fourth Amendment law is particularly instructive in construing the term "reasonable expectation of privacy" as used in OCGA § 16-11-62 (2) (B) "because that phrase had developed into a term of art relating to privacy rights" by the time that provision was enacted in 2000).

*Henderson v. State*, __ Ga. __, __ (3) (__ SE2d __) (2021) (citations and punctuation omitted). See also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ."). Any error in excluding Wesley's testimony about what he overheard over the baby monitor was harmless, because it was highly probable that exclusion of the testimony did not contribute to the verdicts. The proffered testimony was cumulative of other evidence as to Griffith's involvement. Moreover, even if the jury had concluded that Griffith dealt the final blow to Walnoha, it still would have had strong evidence on which to convict Byers of the charged offenses, at least as a party to the crimes.

Even without Wesley's proffered testimony about Griffith's involvement, the jury heard other evidence, in addition to Byers's statements, that Griffith may have dealt the final blow that felled Walnoha in the yard. See *Mitchell v. State*, 293 Ga. 1, 3 (2) (742 SE2d 454) (2013) (exclusion of evidence harmless when cumulative of other evidence admitted at trial). Prior to Wesley's testimony,

9

another witness who was housed with Griffith in jail testified that Griffith had referred to himself as "the ax murderer." Although that witness indicated that Griffith was "kidding," the defense also was able to elicit Wesley's testimony for the jury that on one occasion when he visited Griffith in jail, Griffith was "screaming and yelling and saying he murdered somebody."

Moreover, even if the jury had heard and credited Wesley's testimony about Griffith's involvement, and found that Griffith dealt the final blow, it is still highly probable that the jury would have concluded that Byers was guilty of Walnoha's murder and the other crimes of conviction, at least as a party to the crimes, as the evidence of Byers's guilt was very strong. See *Keller v. State*, 308 Ga. 492, 503 (5) (842 SE2d 22) (2020) (in the "light of the strong evidence of [appellant's] guilt," refusal to allow appellant's witness to testify was "harmless error, if error at all," because it was highly probable that exclusion of evidence did not contribute to the verdict (citations and punctuation omitted)). "Conviction as a party to a crime requires proof that the defendant shared a common criminal intent

10

with the principal perpetrator of the crime, which may be inferred from presence, companionship, and conduct before, during, and after the offense." *Hood v. State*, 309 Ga. 493, 498 (1) (847 SE2d 172) (2020) (citation and punctuation omitted). Here, Byers admitted striking Walnoha in the head with an ax twice, claiming that he did so to protect Griffith and Griffith's family. Byers claimed that he then consulted with Griffith about what to do next, telling Griffith that Walnoha was dead. Byers claimed that Griffith then hit Walnoha with an ax himself and that the two then worked together to bury the body and clean up the crime scene and murder weapon. Byers also admitted taking Walnoha's car; his own mother testified that she saw him with Walnoha's car and other property around the time Walnoha is believed to have been killed; and DNA evidence showed that Byers had been driving Walnoha's car after his death. Physical evidence such as the condition of the alleged crime scene and the ax found at the Babcock home also was consistent with Byers's admissions. Although Byers argues that there was no evidence that he and Griffith worked in concert to murder Walnoha,

11

Byers's own statement, corroborated by other evidence, would have strongly supported such a conclusion. See *Eller v. State*, 303 Ga. 373, 378 (II) (811 SE2d 299) (2018) (evidence that appellant went to great lengths to conceal victim's death, working with co-defendant to dispose of his body, get rid of murder weapon, clean up and destroy evidence at the crime scene, then lie to victim's family and law enforcement supported finding that appellant aided and abetted assault). Therefore, even if Wesley had been permitted to testify that he overheard Griffith say that he inflicted the final blow to Walnoha, and even if the jury had credited that testimony, the jury still would have been highly likely to have found Byers guilty of murder and the other crimes charged.

Byers also argues that he was not indicted for being a party to a crime but rather "was indicted and convicted of malice murder for causing Walnoha's death." But a defendant need not be charged specifically as a party to the crime in order to support a conviction based on that theory. See *Byrum v. State*, 282 Ga. 608, 609-610 (2) (652 SE2d 557) (2007). The State specifically argued to the jury in

closing that Byers could be convicted as a party to the crimes. And the trial court instructed the jury on the concept of party to a crime, explaining that every party to a crime may be charged with and convicted of commission of the crime — an instruction to which Byers affirmatively agreed at the charge conference and did not object when the instruction was given. Any error in excluding Wesley's proffered testimony was therefore harmless.

2.    Byers next argues that the evidence was insufficient to sustain his conviction for aggravated battery. At the very least, he argues, his conviction for aggravated battery should be vacated, because that count merges into his conviction for malice murder. We disagree.[4]

---

[4] Although the Attorney General says that it appears that the aggravated battery count should have merged, the District Attorney does not agree. In a reply brief, Byers challenges the State's practice of filing two response briefs in murder cases, arguing that the practice is not supported by this Court's rules and allows the State to exceed the page limit on briefs, and that he is faced with inconsistent positions on the merger issue. But the State's practice of filing two briefs in murder cases is simply the result of overlapping statutory responsibilities of the Attorney General and district attorneys. The Attorney General has the statutory responsibility to "represent the state in all capital felony actions before the Supreme Court[.]" OCGA § 45-15-3 (5). And district attorneys have the statutory responsibility to "attend before the appellate

13

The indictment charged Byers with aggravated battery for "maliciously caus[ing] bodily harm to . . . Walnoha, by seriously disfiguring his body, by striking . . . Walnoha on and about his head with an axe[.]" See OCGA § 16-5-24 (a). Byers argues that the evidence is insufficient to support his aggravated battery conviction because the State introduced no evidence of serious disfigurement of Walnoha. We evaluate the sufficiency of evidence as a matter of federal due process under the Fourteenth Amendment to the United States Constitution by determining whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). In conducting that evaluation, "[i]t is not the job of this Court to weigh the evidence on appeal or resolve conflicts in trial testimony but rather to examine the evidence in the light most

courts when any criminal case emanating from their respective circuits is tried" and "to argue the same[.]" OCGA § 15-18-6 (6). As a matter of comity between branches, we decline to require two different constitutional officers both exercising executive powers to combine their arguments into a single brief hundreds of times a year. (And Byers overestimates the benefit to any party that more pages affords.)

14

favorable to the verdict[.]" *Browder v. State*, 294 Ga. 188, 191 (1) (751 SE2d 354) (2013) (citation and punctuation omitted).

Although the Criminal Code does not define "seriously disfiguring" as used in the aggravated battery statute, see OCGA § 16-5-19, that term generally has been construed as meaning "gravely or greatly impairing or injuring the appearance of a member of a victim's body, even if only temporarily." *Byrd v. State*, 251 Ga. App. 83, 84 (1) (553 SE2d 380) (2001); see also *Baker v. State*, 246 Ga. 317, 318 (2) (271 SE2d 360) (1980) (construing predecessor statute). "Aggravated battery predicated upon serious disfigurement, whether temporary or permanent, requires proof that the injury inflicted was more than a superficial wound, that is, a scrape, bruise, discoloration, or swelling." *Yearwood v. State*, 297 Ga. App. 633, 634 (1) (678 SE2d 114) (2009) (citation and punctuation omitted). "Inasmuch as the circumstances inevitably vary in each case of aggravated battery, whether disfigurement is serious is best resolved by the factfinder on a case-by-case basis and is almost always a question for the jury." Id. at 634-635 (1) (citation

and punctuation omitted).

Even assuming that serious disfigurement requires evidence that the victim's *outward* appearance was altered in some way, see *Weaver v. State*, 351 Ga. App. 167, 176-179 (830 SE2d 618) (2019) (Rickman, J., concurring in part and dissenting in part), we conclude that the evidence was sufficient to support Byers's aggravated battery conviction. A reasonable juror might readily infer that two blows to the head with an ax, hard enough that the assailant initially believed them to be fatal, leaving the victim twitching, convulsing, or swaying, and able only to crawl, would cause a significant, outwardly visible head wound. And the evidence that Walnoha bled from the head so profusely that there was blood on the couch, floor, and wall authorized the jury to infer that Walnoha in fact suffered disfigurement that was not merely superficial, but serious. See *Baker*, 246 Ga. at 318 (2) (aggravated battery statute's prohibition against maliciously causing bodily harm to another by serious disfigurement gave defendant due notice that his acts were prohibited where evidence showed that he broke victim's nose and

16

caused extensive bruising and deep lacerations to victim's face and head, with arterial bleeding flowing from one laceration).

Byers also argues that, even if there were sufficient evidence to find him guilty of aggravated battery, that count should have merged into his malice murder conviction. He contends that "there was no evidence of Walnoha living for a period of time after the disfigurement for there not to be a merger with the murder" and that a "plain reading of the indictment makes clear that the same facts used to establish aggravated battery were used for malice murder" in that both counts were based on allegations that Byers struck Walnoha on the head with an ax. Where a victim suffers a series of injuries, there must be a deliberate interval separating the infliction of the initial injury from the infliction of a subsequent injury in order to authorize separate convictions for malice murder and aggravated battery. See *Howell v. State*, 307 Ga. 865, 873 (2) (838 SE2d 839) (2020); *Edwards v. State*, 301 Ga. 822, 828 (4) (a) (804 SE2d 404)

(2017).[5]

Here, both the malice murder and the aggravated battery charges, as indicted, required proof that Byers (either personally or as a party to the crime) struck Walnoha on and about the head with an ax. But the guilty verdicts were not necessarily predicated on the same act, as there was evidence that Byers inflicted blows on Walnoha on the couch, resulting in serious disfigurement, before he (or Griffith) inflicted a final blow in the yard. And there was evidence of a deliberate interval between the blows inflicted on the couch and the blow inflicted in the yard, as the evidence showed that, before Byers or Griffith inflicted the final blow, Byers took the time to consult with Griffith about what to do next, during which time Walnoha staggered into the yard. See *White v. State*, 297 Ga. 218, 221 (4) (773 SE2d 219) (2015) (evidence sufficient to sustain finding of deliberate interval between shooting and subsequent

---

[5] The order of the injuries is not controlling; a fatal injury supporting a malice murder conviction may precede a non-fatal assault supporting an assault or battery conviction. See *White v. State*, 297 Ga. 218, 221 (4) (773 SE2d 219) (2015).

beating, given testimony that victim took a "long time" to fall to the ground after the shooting and beating did not occur until after this long time, while victim was still alive and conscious); *Lowe v. State*, 267 Ga. 410, 412 (1) (b) (478 SE2d 762) (1996) (separate convictions for aggravated assault and malice murder authorized where, after defendant fired a shot and inflicted a non-fatal wound to the victim's arm, there was an ensuing interval during which defendant walked around car and, before firing the fatal shot, took deliberate aim at the wounded and pleading victim). Although the failure to recover Walnoha's body presumably precluded the presentation of medical evidence as to which blow or blows caused or contributed to Walnoha's death, the evidence that Walnoha was able to move into the yard authorized the jury to conclude that the subsequent blow in the yard was at least a proximate cause of Walnoha's death. Therefore, the jury could infer that there was a completed, non-fatal assault, followed by a deliberate interval and a later battery that was the proximate cause of death, such that the earlier battery did not merge into Byers's murder conviction. See *Cordero v. State*, 296

19

Ga. 703, 709-713 (3) (770 SE2d 577) (2015) (crime of cruelty to children, based on injuries that occurred weeks or months before child's death, did not merge with the crime of felony murder, even though medical examiner and child abuse expert both testified that the death was not caused by any one blow but by the accumulation of beatings over the course of many months). The trial court properly entered separate convictions and sentences for aggravated battery and malice murder.

3. Finally, Byers argues that his felony sentence for tampering with evidence should be vacated and the case remanded so that he can be sentenced for misdemeanor tampering with evidence. The State properly concedes that the trial court erred in this regard. Each charged count of felony tampering with evidence related to concealing Walnoha's body "with intent to prevent the apprehension of" Byers. These counts did not mention any intent to prevent the apprehension of anyone other than Byers. A person who tampers with evidence of his *own* crime is guilty of only a misdemeanor. See *White v. State*, 287 Ga. 713, 717 (1) (d) (699 SE2d

291) (2010).[6]

*Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.*

Decided April 5, 2021.

Murder. Pickens Superior Court. Before Judge Weaver.

*John R. Monroe*, for appellant.

*B. Alison Sosebee, District Attorney, Elizabeth B. Mackey,*

*Nicholas D. Nunn, Jessica G. Cantrell, Assistant District Attorneys;*

*Christopher M. Carr, Attorney General, Patricia B. Attaway*

*Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant*

*Attorney General*, for appellee.

---

[6] Although not raised by the parties, it is possible that the tampering count might merge into Byers's conviction for concealing the death of another. Given our remand and the absence of briefing, we express no view on the issue in this posture. But Byers is not prohibited from raising that issue on remand for resentencing. We note the parameters that OCGA § 17-10-1 (f) places on the correction of a sentence on remand.