[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-10479

_____

DERRICK WYNN,

Plaintiff-Appellant,

*versus*

CITY OF GRIFFIN, GEORGIA,
STEVEN D. HEATON,
in his official capacity as Chief of Police for the
Griffin Police Department of the City of Griffin, Georgia,
TINA BEAN,
WILLIAM SHAW,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:16-cv-00094-TCB

———————————————

Before JORDAN, TJOFLAT, and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

This is a malicious prosecution case, brought under 42 U.S.C. § 1983. Derick Wynn alleged that Officer Tina Bean lacked probable cause to commence his prosecution for aggravated battery and therefore deprived him of his Fourth Amendment right to be secure against unreasonable seizure. The District Court granted Officer Bean's motion for summary judgment, concluding that she was entitled to qualified immunity from suit. Wynn appeals the judgment. We affirm on the ground that the officer had probable cause to commence the prosecution.

## I.

### A.

On September 25, 2014, at approximately 12:52 p.m., Officer Tina Bean, a patrol officer with the City of Griffin Police Department, responded to a disturbance call at the Department of Child and Family Services. When she arrived, William Shaw – an individual known to have mental health issues and/or alcohol problems – was visibly intoxicated and generally creating a fuss. After speaking

with Shaw and obtaining his consent, Officer Bean requested that EMS transport Shaw to Spalding Regional Medical Center so that he could recover his faculties.

At the hospital, Shaw was involved in a physical altercation with Derrick Wynn, a hospital security guard. The police were called, and at approximately 3:27 p.m., Patrol Officer Dorsey was dispatched to the scene. When Officer Dorsey learned that Shaw was involved in the altercation, he informed Officer Bean, who voluntarily responded to the hospital. Upon Officer Bean's arrival, Shaw told her that Wynn had attacked him. According to Shaw, Wynn entered his hospital room and threw him down on the bed, using his forearm to pin Shaw down, effectively choking him. Shaw added that his head was hanging off the edge of the bed while Wynn held him down and that his shoulder was injured in the process. Shaw claimed that the other security officer on duty, Lewis Dawkins, had to pull Wynn off him and that he had done nothing to provoke the attack.

During Officer Bean and Shaw's conversation, Shaw was "very animated, emotional, and combative." As a result, Officer Bean informed Shaw that she could not take his official statement at that time. Bean told Shaw that he could, however, file a report if he wished once he sobered up. Four days later, on September 29, Shaw contacted the police and officially reported the incident. Shaw met with Officer Bean and told her once more that Wynn threw him down on the hospital bed, used his forearm to hold him down, and injured his shoulder in the process. Shaw repeated his

claim that Dawkins had been forced to pull Wynn off him and that Wynn's actions were unprovoked. Shaw also stated that he returned to the hospital shortly after the incident and received treatment for his shoulder.[1]

Approximately three weeks later, on October 22, Shaw made a video-recorded statement regarding the altercation. Shaw's recollection of the incident remained the same, but he added that his shoulder injury pre-dated the incident. According to Shaw, Wynn had aggravated the prior injury, which stemmed from a bicycle accident. He claimed that his shoulder had been healing, but after the incident, it would need further treatment. Shaw also provided medical records proving he sought medical attention the day after the alleged assault, although he had not seen a doctor since then.

Officer Bean and Sergeant Jimmy Hancock, her supervisor, investigated the incident for over a month.[2] During this time, the two spent many hours reviewing the hospital security camera footage, speaking with witnesses, and discussing the case. Wynn, himself, never gave a statement, but Officer Bean did interview Dawkins, the other security guard.[3] Dawkins claimed that Shaw was

---

[1] It appears that this appointment did not require an overnight stay.

[2] We note that while Sergeant Hancock is an investigating officer, Officer Bean is not, herself, an investigator. She asked to participate in the investigation for learning purposes.

[3] It is disputed whether Wynn declined a request for an interview. Officer Bean claims that she called Wynn on October 22 to request that he make a

making threats and attempting to physically assault Wynn. Dawkins intervened to try to de-escalate the situation, but Shaw continued making threats and eventually "made contact" with Wynn. At this point, Dawkins stated that Wynn "lifted [Shaw] and put him on the bed to restrain him." According to Dawkins, Wynn held Shaw down for a couple seconds and then let him up.

The hospital security camera captured (without sound) the incident. The District Court summarized what the camera footage revealed as follows:

> The video shows Shaw and Wynn in an increasingly tense verbal exchange. Shaw was in Wynn's face, arguing with him. Shaw moved in close to Wynn, who pushed him back towards the wall. Shaw advanced towards Wynn again. At this point, the putative crime occurred. Wynn abruptly grabbed Shaw, picked him up, and threw him across the hospital bed. Wynn, manifestly larger than Shaw, placed his body weight on Shaw, whose head and partial shoulder were hanging off the edge of the bed. Wynn stayed on top

---

statement, and that Wynn said he was unavailable. Wynn, on the other hand, claims that Officer Bean never attempted to obtain his statement even though he remained able and willing to be interviewed. According to Wynn, it was not until he reached out to Officer Bean that she said he could come down to the station and give a statement if he wished. In the end, Wynn did not make a statement because by the time Officer Bean told him he could come down to the station, Wynn had been advised not to go without a lawyer.

of Shaw, his arm across his airway, for about thirty seconds; just before releasing him, Wynn gave Shaw a last little push against the bed. When he let Shaw up, Shaw can be seen in later points of the video rubbing his right shoulder – the shoulder against which Wynn placed his body weight to pin him to the hospital bed.

Shaw's initial statement at the hospital, his official statement four days later, and his video-recorded interview largely match what the camera footage depicted. The footage did not capture Dawkins being forced to remove Wynn from Shaw.

Officer Bean reviewed the security camera footage with Sergeant Hancock and Lieutenant Richardson. Sergeant Hancock then advised Officer Bean to take all the evidence to a magistrate, explain the situation, and request a warrant for Wynn's arrest. Following Sergeant Hancock's direction, Officer Bean met with a magistrate on October 28, 2014. The magistrate suggested she consult an attorney in the Spalding County District Attorney's Office. Officer Bean then spoke with one of the Assistant District Attorneys, D. Lee, who advised her that there was probable cause to obtain an arrest warrant for Wynn for aggravated battery.[4]

Having conferred with Assistant District Attorney Lee, Officer Bean returned to the magistrate that same day and obtained

---

[4] Under Georgia law, a person commits aggravated battery when he "maliciously causes bodily harm to another…by seriously disfiguring his or her body or a member thereof." O.C.G.A. § 16-5-24(a) (2017).

an arrest warrant for aggravated battery. The warrant affidavit stated that Wynn committed the battery by "seriously disfiguring a member of William Shaw [sic] body, to, wit, his Clavical [sic]" and that when Wynn threw Shaw on the hospital bed it resulted 'in serious injury to the collar bone (Clavical) [sic]."

On October 30, 2014,[5] after learning that a warrant had issued for his arrest, Wynn turned himself in to the Spalding County Jail. He spent approximately eighteen hours in jail before he appeared before a magistrate for an initial appearance[6] with retained counsel. After informing Wynn of the aggravated battery charge and his rights, the magistrate admitted Wynn to bail on the posting of bond.

Several months later, Spalding District Attorney Scott Ballard, acting through a second Assistant District Attorney, Kimberly Schwartz, dismissed the aggravated battery charge against Wynn.[7] The dismissal notice, dated March 24, 2015, describes the incident as follows:

---

[5] The record is inconsistent on the date Wynn turned himself in. In his deposition, Wynn claimed to have turned himself in on October 30. Wynn's Complaint says he turned himself in on October 29. And Officer Bean's case summary states that she was informed that Wynn turned himself in on October 31.

[6] Ga. Unif. R Mag. Ct. 25.1.

[7] The record is silent as to whether Assistant District Attorneys Lee and Schwartz discussed the case or consulted the District Attorney prior to the dismissal of the charge.

Wynn…physically pushed Shaw onto the hospital bed and held him there for a period of several seconds, until it appears, Shaw calmed down and became less combative, at which time Wynn released Shaw. At no point d[id] Wynn strike Shaw and it appears that Wynn use[d] only that force necessary to restrain Shaw temporarily.

The notice further emphasizes that Shaw had injured his shoulder prior to the incident. The charge was dismissed because the District Attorney believed it was "unlikely that a reasonable jury would find, based on the evidence and beyond a reasonable doubt" that Wynn acted with malice and seriously disfigured Shaw, two elements of the crime of aggravated battery.

## B.

On June 9, 2016, Wynn brought this action against Officer Bean, in her individual capacity, Shaw,[8] the Chief of the City of Griffin Police Department, Steven Heaton in his official capacity,[9] and the City of Griffin (collectively "the City"). His complaint

---

[8] Shaw did not respond to Wynn's complaint and was dropped from the case following the District Court's final disposition of the claims lodged against him.

[9] On the motion of the Chief of the Griffin Police Department, the District Court concluded that claims against him in his official capacity and the claims against the City were the same and therefore dismissed him from the case and allowed claims against the City to proceed. Wynn does not challenge the Court's ruling in this appeal.

contained six counts,[10] some of which contained multiple discrete claims.  Two of the claims are before us in this appeal.[11]  They were

---

[10] Wynn's complaint was a typical "shotgun" pleading in which *all* of the claims were brought under 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments of the United States Constitution and under Articles 1, § 1, I, II, XIII and XVII of the Georgia Constitution.  Count One mingled all of the claims together---basing them on all of the factual allegations of the complaint---and alleged that all "Defendants . . . acted under color of state laws to deprive Plaintiff of rights, privileges, and immunities secured by the" federal and state constitutions.  Count Two alleged that Officer Bean falsely arrested Wynn and that "Defendants maliciously prosecuted Plaintiff for the criminal offense of aggravated battery."  Count Three alleged the City and Office Bean breached "their legal duty to enforce the laws of the State of Georgia in a reasonable and lawful manner" and that the City breached "their legal and public duty to properly supervise, train, and control Bean . . ."  Count Five alleged that the "Defendants intentionally and recklessly initiated and pursued a criminal prosecution of Plaintiff."  Count Six alleged that "Defendants' tortious conduct caused Plaintiff to lose his position as a security guard at the Hospital and interfered with Plaintiff's employment."

Rather than move the District Court to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) or for a more definite statement pursuant to Fed. R. Civ. P. 12(e), Officer Bean and the City jointly answered the complaint.  In addition to responding to each of the eighty-five numbered paragraphs of the complaint, their answer asserted seventeen affirmative defenses.  Each affirmative defense consisted of one sentence and applied indiscriminately to all counts of the complaint and the discrete claims the counts purported to allege.  Of note were the "First" and "Sixth" defenses.  The first alleged: "The Complaint fails to state a claim upon which relief may be granted and therefore must be dismissed."  The Sixth alleged: "Plaintiff's claims . . . are barred, because Plaintiff . . . failed to plead same with the specificity required to state a cause of action."  Defendants never requested the District Court to rule on these defenses by moving the Court pursuant to Rule 12(c) to grant them judgment on the pleadings.  Thus, these and the other affirmative defenses became

brought against Office Bean and the City under 42 U.S.C. § 1983 for violations of Wynn's Fourth Amendment right against unreasonable seizure.[12]

The first claim alleged that Officer Bean maliciously prosecuted Wynn for aggravated assault without probable cause. The second claim was that Officer Bean initiated the malicious prosecution because the City failed to adequately train or supervise her in the investigation of criminal allegations.

After Officer Bean and the City answered the complaint and the parties engaged in discovery, Wynn served the City with the

---

nothing but dead letters. At the end of the day, the District Court lifted from the complaint the claims involved here.

[11] As a preliminary matter, the District Court found that a § 1983 plaintiff may not bring a false arrest claim when his arrest was made pursuant to a court order. A claim for false arrest typically arises when a plaintiff is subjected to a wrongful arrest without a warrant. A malicious prosecution claim, in contrast, arises when a plaintiff claims false arrest pursuant to warrant. See Calero–Colon v. Betancourt–Lebron, 68 F.3d 1, 4 (1st Cir. 1995) (holding adopted by the Eleventh Circuit in Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996) ), abrogated on other grounds by Wallace v. Kato, 549 U.S. 384, 389–90, 127 S. Ct. 1091, 1095–96 (2007)) ("As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution.... On the other hand, wrongful warrantless arrests typically resemble the tort of false arrest."). The District Court therefore properly dismissed Wynn's claim for false arrest. Wynn does not dispute this decision on appeal.

[12] The Fourth Amendment has been made applicable to the States under the Due Process Clause of the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 660, 81 S. Ct. 1684, 1694 (1961).

report of his expert witness, Andrew J. Scott, III, regarding the professional quality of Officer Bean's actions.[13] The report focused on the issue of whether Officer Bean had "probable cause to arrest [Wynn], whether Wynn used excessive or justifiable force, and whether Officer Bean conducted a legally adequate investigation." Scott opined that probable cause was lacking, the force Wynn used was justifiable, and that Officer Bean's investigation was inadequate. Officer Bean and the City moved separately to strike this report and exclude Scott's opinion testimony and for summary judgment.

The District Court granted the motion to exclude Scott's opinions, finding that they were "either irrelevant under *Daubert* or inadmissible as opinions on ultimate issues of law."[14] The Court then granted Officer Bean's and the City's motions for summary judgment. The Court granted Officer Bean's motion because she did not violate Wynn's Fourth Amendment right against unreasonable seizure and therefore was entitled to qualified immunity.[15]

---

[13] Scott was a former police chief who then served as the president of AJS Consulting, LLC. AJS Consulting provided expert witness testimony relating to, among other things, police procedures and practices, the use of lethal and non-lethal force, and police hiring practices, recruitment, and retention issues.

[14] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 2795 (1993).

[15] The District Court concluded that Officer Bean did not violate Wynn's Fourth Amendment right because, although the Court found that she did not have probable cause to secure an arrest warrant for aggravated battery, the "facts known to her at the time supported at least *arguable* probable cause that

The Court granted the City's motion because without a constitutional violation on Officer Bean's part, there was no basis for a § 1983 claim against the City under *Monell*.[16]  Having dismissed all of Wynn's federal claims, the District Court declined to exercise supplemental jurisdiction over his state law claims.

Wynn now appeals, arguing that the District Court erred because (1) Officer Bean was not entitled to qualified immunity, (2) the City inadequately trained and supervised Officer Bean, and (3) Scott's opinions were relevant and admissible and, thus, should not have been excluded.  We conclude that Wynn failed to establish a case of malicious prosecution under § 1983 because he fails to show that the State lacked probable cause to charge him with aggravated

---

Wynn committed the lesser crime of simple battery." The District Court relied on our decision in *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010), and concluded that so long as probable cause existed to arrest Wynn for *any* offense (here, simple battery), then his arrest and subsequent detention was constitutionally valid.  While this case was pending, we rejected this "any crime" doctrine in the context of § 1983 malicious prosecution claims.  *See Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020) (concluding that the any-crime rule does not apply to claims of malicious prosecution under the Fourth Amendment).

[16] *Monell v. Dept. of Soc. Servs*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035 (1978) (holding that a local government is a "person" subject to suit under § 1983 and thus can be sued for constitutional deprivations resulting from government custom or policy).

battery.  We therefore affirm the District Court's decision granting Officer Bean and the City summary judgment.[17]

## II.

We review denials of summary judgment based on qualified immunity *de novo*, viewing the facts in the light most favorable to the nonmovant. *See Hunter v. City of Leeds*, 941 F.3d 1265, 1271 n.8 (11th Cir. 2019).  Additionally, we may affirm a district court's judgment on any ground that finds support in the record. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

## III.

Wynn argues that Officer Bean violated his clearly established Fourth Amendment right to be free from unreasonable seizure via malicious prosecution.[18]  *See Whiting*, 85 F.3d 581 at 584.  To prevail on such a claim, Wynn must prove (1) the elements of the common law tort of malicious prosecution and (2) a violation of his Fourth amendment right to be free from unreasonable seizures. *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019).  We begin first with the malicious prosecution prong and conclude that

---

[17] Having found that Officer Bean and the City are entitled to summary judgment, we decline to consider whether the District Court abused its discretion in excluding Scott's opinions.

[18] We note that even though Wynn turned himself in rather than be arrested, his voluntary surrender still constitutes a seizure under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 812 (1994) ("[The defendant's] surrender to the State's show of authority constituted a seizure for the purposes of the Fourth Amendment.").

Wynn failed to show that Officer Bean acted with malice and without probable cause when she requested a warrant charging Wynn with aggravated battery.

## A.

The constituent elements of the common law tort of malicious prosecution[19] are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Grider,* 618 F.3d at 1256 (citing *Wood v. Kesler,* 323 F.3d 872, 882 (11th Cir. 2003)). Although Wynn can establish elements one, three, and four, his claim ultimately fails because he is unable to show that Officer Bean acted with malice and without probable cause. We discuss each element in turn, saving malice and probable cause for last.

Wynn must first show that a prosecution was instituted against him by Officer Bean. Under Georgia law, "an inquiry before a committing court or a magistrate shall amount to a prosecution" for the purposes of malicious prosecution. *See Sheffield v. Futch,* 839 S.E.2d 294, 299 (Ga. Ct. App. 2020). The prosecution

---

[19] The elements of the malicious prosecution tort vary slightly across the states. In Georgia, a plaintiff bringing a claim of malicious prosecution must show "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation, or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." *Sheffield v. Futch,* 839 S.E.2d 294, 301 (Ga. Ct. App. 2020) (citing *McKissick v. S. O. A., Inc.,* 684 S.E.2d 24 (2009)).

need not result in an indictment or a jury trial; simply being arrested and brought before a magistrate for an initial appearance and admission to bail suffices. *See Branson v. Donaldson*, 426 S.E.2d 218, 221 (Ga. Ct. App. 1992) (noting that a proceeding in which the plaintiff, after his arrest, was brought before a magistrate who set bond constitutes an inquiry before a committing court or magistrate). Here, the record shows that Officer Bean requested a warrant for Wynn's arrest for committing an aggravated battery. Wynn, upon learning of the arrest warrant, turned himself in to the Spalding County Jail and was held there for about eighteen hours before being released on bail after an initial appearance. This is sufficient to satisfy the first element of the malicious prosecution claim.

Wynn can also show that the prosecution both culminated in a favorable judgment and caused him damages. The aggravated battery charge was dismissed nearly five months after Wynn's release on bail because the District Attorney believed that it was "unlikely that a reasonable jury would find, based on the evidence and beyond a reasonable doubt," that Wynn had committed the offense. Although the dismissal does not, as we will explain shortly, speak to the element of probable cause, it does constitute a judgment in Wynn's favor. *See Laskar v. Hurd,* 972 F.3d 1278, 1285 (11th Cir. 2020) ("We have also held that a prosecutor's unilateral dismissal of charges against a plaintiff constitutes a favorable termination.") (citing *Uboh v. Reno*, 141 F.3d 1000, 1005-06 (11th Cir. 1998)). And the fact that Wynn spent eighteen hours in jail and

then lived under the cloud of an aggravated battery charge for nearly five months certainly satisfies the damages element. *See McDonough v. Smith*, 139 S. Ct. 2149, 2160 (2019) (noting that the injury caused by a classic malicious prosecution first occurs as soon as the legal process is brought to bear on a defendant). It is the allegedly unwarranted prosecution itself, after all, and the reputational damage and emotional distress that results from it, that constitutes the harm giving rise to a malicious prosecution claim. *See Laskar*, 972 F.3d at 1292 ("The mischief is done by the arrest and disgrace caused by a charge of crime, and by the expense and annoyance attending the proceeding. A discharge without a trial does not destroy the effect of the mischief…" (quoting *Stanton v. Hart*, 27 Mich. 539, 540 (Mich. 1873))). Thus, Wynn is able to satisfy the third and fourth elements of the malicious prosecution claim.

Wynn's claim meets a fatal stumbling block, however, on the elements of malice and probable cause. To succeed on his malicious prosecution claim, Wynn must show that Officer Bean instituted the prosecution – i.e., secured the arrest warrant – with malice and without probable cause. Malice may be inferred where the defendant "makes a false statement to the police for achieving some personal goal," *McKissick v. S.O.A. Inc.*, 684 S.E.2d 24, 29 (Ga. Ct. App. 2009), when a person acts out of "personal spite," *id.*, or when a person acts with a "reckless disregard for or conscious indifference to the rights of the plaintiff." *Flaming v. U-Haul Co. of Georgia*, 541 S.E.2d 75, 78 (Ga. Ct. App. 2000). Malice can also be inferred from a total lack of probable cause. *Sheffield,* 839 S.E.2d

at 301.  Indeed, "the absence of probable cause on the part of the person instituting the prosecution" is often the "gravamen" of the complaint because it allows the plaintiff bringing a malicious prosecution claim to satisfy the "malice" requirement as well. *See id.*

Given Wynn has introduced no evidence suggesting that Officer Bean acted out of personal spite or to achieve a personal goal,[20] Wynn's claim turns on whether Officer Bean had probable cause to request the warrant for aggravated battery.  In determining whether probable cause existed, the

> question is, not whether plaintiff was guilty, but whether defendant[] had *reasonable cause to so believe* – whether the circumstances were such as to create in the mind of [the] defendant[] [–] a *reasonable belief* that there was probable cause for the arrest and prosecution. Probable cause is defined to be the existence of such facts and circumstances as would excite the *belief* in a reasonable mind, that the person charged was guilty of the crime for which he was arrested and prosecuted.

---

[20] Wynn never explicitly alleges that Officer Bean acted with malice. Wynn makes only conclusory allegations – for example, that "Officer Bean certainly knew that this case did not involve the statutory elements of aggravated battery" and that Officer Bean "wanted to investigate a serious felony case" and so she submitted her request for a warrant knowing her affidavit was based on false information – to imply malice on Officer Bean's behalf. We dispose of these allegations in our probable cause discussion.

*Gibbs v. Loomis*, 576 S.E.2d 589, 592 (Ga. Ct. App. 2003) (quoting *Smith v. Trust Co. Bank*, 450 S.E.2d 866, 869 (1994)); *see also Paez*, 915 F.3d at 1285 ("Probable cause… is established 'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)).

Here, the record shows that Officer Bean conducted a thorough month-long investigation under the supervision of Sergeant Hancock.  During the investigation, she met with Shaw on three different occasions: the day of the altercation, four days later when Shaw officially reported the alleged assault, and on October 22 when Shaw made a video-recorded statement. Each time, Shaw provided the same account of his encounter with Wynn and alleged that his shoulder had been injured when Wynn threw him down and pinned him on the bed.  Officer Bean interviewed Dawkins, the other security guard, and invited Wynn to give a statement. She also obtained the hospital security footage of the incident and reviewed it alongside Sergeant Hancock.

Believing there was probable cause for an arrest, Sergeant Hancock advised Officer Bean to take all the evidence to a magistrate, explain the facts, and request a warrant for Wynn's arrest. Officer Bean did just that.  The magistrate, in turn, advised Officer Bean to seek the advice of someone in the Spalding County District

Attorney's Office. Officer Bean promptly consulted with one of the Assistant District Attorneys, Lee, and explained the facts of the case. Assistant District Attorney Lee advised her that probable cause existed for Wynn's arrest for aggravated battery and only at that point did she return to the magistrate to obtain a warrant for Wynn's arrest.

Although approval by a neutral magistrate is not dispositive of the existence of probable cause, it is "the clearest indication" that an officer acted in "objective good faith" and is therefore exceedingly "pertinent" in assessing whether an officer could have "held a reasonable belief that the warrant was supported by probable cause." See Messerschmidt v. Millender, 565 U.S. 535, 547, 555, 132 S. Ct. 1235, 1245, 1250 (2012). There is even more reason to be confident that a reasonable officer could have believed that probable cause existed when the evidence supporting the warrant application is reviewed by the officer's superiors and a district attorney and they all agree that the application should go forward. See id. at 554, 132 S. Ct. at 1249. Although it is Officer Bean who finds herself the target of Wynn's suit,[21] the record shows that Officer Bean, Sergeant Hancock, Lieutenant Richardson, Assistant District Attorney Lee, and the magistrate all believed there was probable cause for aggravated battery. This strongly suggests that an officer in Officer Bean's shoes could have reasonably believed there was

---

[21] This is so, of course, because the magistrate and the prosecutor(s) are entitled to absolute immunity and Officer Bean represents the only possible target of Wynn's malicious prosecution claim.

probable cause to bring such a charge.[22]  The fact that none of the officials who reviewed the facts of the case with Officer Bean expressed concern regarding probable cause or the lack thereof "demonstrates that any error was not obvious." *See id.* at 556, 132 S. Ct. at 1250.

It is true, of course, that a warrant application must be based on a "truthful showing" of the facts to the neutral magistrate. *See Franks v. Delaware*, 438 U.S. 154, 165-66, 98 S. Ct. 2674, 2681 (1978).  We do not allow an officer to evade accountability for intentional falsehoods or reckless misstatements. *See Paez*, 915 F.3d at 1287.  Wynn argues that Officer Bean obtained the arrest warrant against him by fabricating evidence for probable cause in her arrest warrant application. He claims that Shaw did not suffer any injury as a result of the altercation and that Officer Bean submitted the warrant affidavit alleging serious disfigurement knowing that Shaw's injury was the result of the prior bicycle incident. In short, Wynn claims that Officer Bean "wanted to investigate a serious felony case [and] so she submitted a warrant affidavit" knowing it was unsupported by the facts.

---

[22] The District Court apparently gave no weight to the fact that Officer Bean's supervisors, the assistant district attorney, and the neutral magistrate all believed there was probable cause for aggravated battery and instead found that no officer could have reasonably concluded that the facts were sufficient to support a warrant for aggravated battery. The implication of such a finding, however, is that not only was Officer Bean unreasonable in concluding that there was probable cause, but so too were her supervisors, the assistant district attorney, and the neutral magistrate.

Wynn, however, has introduced no evidence that Officer Bean "intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Williams v. Aguirre*, 965 F.3d 1147 at 1165 (11th Cir. 2020). Instead, Wynn simply points to the fact that Officer Bean knew that Shaw had injured his shoulder previously and argues that Officer Bean could not have reasonably believed that Shaw suffered a "seriously disfiguring" injury to his clavicle or shoulder. Implicit in Wynn's argument is that because Shaw did not suffer a visible injury, Officer Bean *had* to be lying when she stated in her affidavit that Wynn disfigured Shaw's clavicle.

Under O.C.G.A. § 16-5-24(a), a "person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another… by seriously disfiguring his or her body or a member thereof." Because the term "seriously disfiguring" is not defined in the statute, Georgia courts have held that "[a]ggravated battery predicated upon serious disfigurement, whether temporary or permanent, requires proof that the injury inflicted was more than a superficial wound, that is, a scrape, bruise, discoloration, or swelling." *Byers v. State*, 857 S.E.2d 447, 453 (Ga. 2021) (citing *Yearwood v. State*, 678 S.E.2d 114, 116 (Ga. Ct. App. 2009)). While most aggravated battery charges have involved visible injuries to the victims, injuries to internal organs of the victim, such as severe and permanent damage to the victim's liver and spleen, have been found sufficient to sustain an aggravated battery conviction. *See Allen v. State*, 543 S.E.2d 45, 50-51 (Ga. Ct. App. 2009). So too have internal bone fractures resulting in no bruises, swelling, or other

outward signs of damage. *Weaver v. State*, 830 S.E.2d 618, 624 (Ga. Ct. App. 2019).

On multiple occasions, Shaw told Officer Bean that Wynn's actions caused injury to his shoulder. Shaw also told Officer Bean that he had sought medical attention after the altercation and provided the medical records to this effect. Given these facts and given her consultations with her supervisors and the assistant district attorney, Officer Bean could have reasonably believed that Wynn's conduct further aggravated Shaw's pre-existing internal injury in such a way as to constitute aggravated battery. The record is certainly devoid of any evidence that Officer Bean did not have a good faith belief that her affidavit was truthful. *See Franks*, 438 U.S. at 165, 98 S. Ct. at 2681 (noting that a "truthful" affidavit does not require that every fact necessarily be correct but instead that the "information put forth is believed or appropriately accepted by the affiant as true").

Nor is there even one iota of evidence to suggest that Officer Bean distorted the facts during either her conversations with the magistrate or her consultation with the assistant district attorney. In the absence of evidence indicating otherwise, we presume that Officer Bean was acting in good faith and accomplishing her duties in an appropriate manner. *See United States v. Chemical Foundation*, 272 U.S. 1, 14-15, 47 S. Ct. 1, 6 (1926) (noting that the "presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

Wynn further argues that when the District Attorney dismissed the felony charge, his analysis verified that there was no arguable probable cause to prosecute *any* crime. Wynn points to our decision in *Uboh v. Reno* as support for this proposition and suggests that District Attorney Ballard's decision not to pursue any charge, even a simple battery charge, is "consistent with" a finding of no probable cause. In *Uboh*, however, we did not decide whether the officials in question had probable cause to bring charges against the plaintiff. We found only that a prosecutor's unilateral decision to dismiss specific count of an indictment constitutes a favorable termination for the purposes of a malicious prosecution claim. *Uboh v. Reno*, 141 F.3d 1000, 1005-0 (11th Cir. 1998*), abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019). A favorable judgment, as we noted above, is only *one* of the elements of a malicious prosecution claim. Proving that the relevant officer lacked probable cause is an entirely separate element. Indeed, a defendant may ultimately be found innocent even where an officer had probable cause to secure a warrant for his arrest.

A prosecutor may exercise his or her discretion not to pursue a particular prosecution for any number of reasons, none of which have to do with probable cause. Here, the District Attorney dismissed the charge of aggravated battery because he believed it was "unlikely that a reasonable jury would find, based on the evidence, and beyond a reasonable doubt, that [the elements of aggravated battery were] proven." Expressing doubt as to the probable

success of the State at trial is by no means synonymous with an acknowledgement that the charging officer lacked probable cause to bring the charge in the first place.

Even assuming *arguendo* that the District Attorney did not believe, in March of 2015, that there was sufficient probable cause to bring the charge of aggravated battery, this would have no bearing on whether it was reasonable for Officer Bean to believe there was probable cause when she sought the arrest warrant in October of 2014. Officer Bean sought advice from District Attorney *Lee* and was advised by him that there was sufficient probable cause to bring a felony charge. The decision to dismiss the charge against Wynn was made by District Attorney *Ballard*.[23] Undoubtedly, different district attorneys may reach different conclusions regarding the existence of probable cause, but we do not require officers to poll every district attorney to determine if there is a majority consensus on the matter. Nor do we expect officers to second guess the government attorneys from whom they seek advice. *See Scarbrough v. Myles*, 245 F.3d 1299, 1202 n.8 (2001) ("Police officers are not expected to be lawyers or prosecutors.").

Thus, because we find that Officer Bean did in fact have probable cause to request an arrest warrant for the charge of

---

[23] The decision was made by District Attorney Ballard through his assistant, Assistant District Attorney Kimberly Schwartz. Although the record is silent as to whether Schwartz discussed the case with Ballard, this does not affect our analysis. Our point is that two different district attorneys considered the facts at hand and reached different conclusions.

aggravated battery against Wynn, Wynn's common law malicious prosecution claim must fail.

### B.

"It is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grider,* 618 F.3d at 1256.  As such, the existence of probable cause acts an absolute bar to a § 1983 malicious prosecution claim. *Id.* Because Wynn fails to show that Officer Bean lacked probable cause to secure an arrest warrant for aggravated battery, he also cannot show that he was subject to an unreasonable seizure in violation of the Fourth Amendment.

### IV.

Having concluded that Officer Bean is entitled to summary judgment on Wynn's malicious prosecution claim under § 1983, we turn next to Wynn's claim that the City inadequately trained and supervised Officer Bean, thereby resulting in his malicious prosecution.  Because Officer Bean had probable cause to request a warrant for aggravated battery, Officer Bean did not violate Wynn's constitutional rights.  Wynn's § 1983 claim against the City therefore fails as well. *See Monell,* 436 U.S. at 658, 690, 98 S. Ct. at 2035-36 (indicating that the plaintiff's injury must be constitutional in nature for a municipality to be liable under § 1983).

### VI.

For the foregoing reasons, we affirm the District Court's grants of summary judgment in favor of Officer Bean and the City.

**AFFIRMED**.